O’Neali. J.,
dissenting. In this case, I am constrained to dissent from the opinion of the majority of the Court. From January, 1830, to ’43 or ’44, Elkin had possession of the slaves. This was evidence of a title which can seldom be gainsayed. But it is now undertaken to destroy that, and to shew that they were the property of Ford, by a memorandum of hire, at $25 per annum, dated 8th January, 1830. Elkin had, a short time before, married Ford’s daughter. When the negroes went into her husband’s possession, the law regarded it as a gift, and that was the conclusion to which every one had the right to come, notwithstanding this secret memorandum of hire. In the language of a great Judge, (Nott J.,) I would say, that all such *102 loans or hiring ought to be construed gilts. How long was this hiring to continue? was it for one year, or for fifty ? From the language of the memorandum no one can tell. After a. lapse of four years, without a demand of hire, it seems to me the qualified estate ought to be regarded as absolute. The fact stated by Elkin, that he did not expect hire to be demanded, is enough of itself to shew that, this was a mere cover. But I regard the setting up such a hiring, as is done in this case, to preserve the estate in John Ford, as an evasion of the law of marriage settlement. “Here, a father says to his son-in-law, are several negroes which Í will give to you and your wife;” “no, says the son-in-law, I will not accept them, let them be settled on my wife and children.” Instead of doing so, with all the guards of recording, a slip of paper is signed by the son-in-law, acknowledging that ho has the negroes on hire, and, any time afterwards, the father may recover the property against the claims of existing creditors, or purchasers under them. This is a monstrous doctrine, and yet this very case is to give rise to it. The Judge below certainly destroyed by his comment the force of the authority of Archer v. M’Fall. To say of the case, that “the principle which it established carried the rights of creditors to the extreme limit of the law;” and then to tell a jury that they were bound by it, was in point of fact to make them feel that they were bound by a wisp of straw, instead of triple cords. That case placed the law right, in holding that possession of a slave by a son-in-law was in law a gift, and any thing which would make it less must be made known to persons who gave credit subsequent to the possession. In this case the same principle ought to have governed ; for a large part of Aiken’s debt against Elkin arose subsequent to the possession of the slaves ; for Elkin was in continual receipt of the partnership assets for many years after he had the negroes in possession: and of the eventual balance of $3,170 against him, a very small part is from the capital stock put in by Aiken in 1828.
Wardlaw J. concurred.